Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:    (916) 443-6911
Facsimile:    (916) 447-8336
E-Mail:       mark@markmerin.com
              paul@markmerin.com

Attorneys for Plaintiff
MARQUISE CHAPPLE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| MARQUISE CHAPPLE,<br><br>              Plaintiff,<br><br>vs.<br><br>COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and NATHANIEL DAVIS,<br><br>              Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

This case arises from the officer-involved shooting of 18-year-old MARQUISE CHAPPLE on March 5, 2024, by NATHANIEL DAVIS, a detective employed by the COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and Sheriff JIM COOPER.

## JURISDICTION & VENUE

1.     This Court has original jurisdiction of the federal claims under 28 U.S.C. § 1331 (in that they arise under the United States Constitution) and § 1343(a)(3) (in that the action is brought to address deprivations, under color of state authority, of rights, privileges, and immunities secured by the United States Constitution). This Court has supplemental jurisdiction of the state claims under 28 U.S.C. § 1367.

2.     Venue is proper in the United State District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Eastern District of California and

1

1    because many of the acts and/or omissions described herein occurred in the Eastern District of California.

2        3.    Intradistrict venue is proper in the Sacramento Division of the Eastern District of

3    California pursuant to Eastern District of California Local Rule 120(d) because the claims asserted herein

4    arise from acts and/or omissions which occurred in the County of Sacramento, California.

5                   **EXHAUSTION**

6        4.    On May 1, 2024, MARQUISE CHAPPLE submitted a government claim to the COUNTY

7    OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER

8    relating to the claims asserted in this action. (Claim No. L2400154-0002.)

9        5.    By June 17, 2024, the COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

10    SHERIFF'S DEPARTMENT, and JIM COOPER failed or refused to act on the government claim.

11                   **PARTIES**

12        6.    Plaintiff MARQUISE CHAPPLE is a resident of the County of Sacramento, California.

13        7.    Defendant COUNTY OF SACRAMENTO is located in the State of California. Defendant

14    COUNTY OF SACRAMENTO is a "public entity" pursuant to California Government Code § 811.2.

15        8.    Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT is located in the

16    County of Sacramento, California. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT

17    is a "public entity" pursuant to California Government Code § 811.2.

18        9.    Defendant JIM COOPER is and was, at all times material herein, a law enforcement

19    officer and the Sheriff for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY

20    SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law.

21    Defendant JIM COOPER is sued in an individual capacity.

22        10.    Defendant NATHANIEL DAVIS is and was, at all times material herein, a law

23    enforcement officer employed by Defendants COUNTY OF SACRAMENTO and SACRAMENTO

24    COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state

25    law. Defendant NATHANIEL DAVIS is sued in an individual capacity.

26               **GENERAL ALLEGATIONS**

27        11.    At all times relevant herein, all wrongful acts described were performed under color of

28    state law and/or in concert with or on behalf of those acting under the color of state law.

12.     On March 5, 2024, around 8:30 p.m., Plaintiff MARQUISE CHAPPLE was a passenger in a vehicle parked in a parking lot in front of The Mart, located at 4220 Fruitridge Road, Sacramento, CA 95820. Plaintiff MARQUISE CHAPPLE is a Black male and, on that date, was 18 years old.

13.     Plaintiff MARQUISE CHAPPLE was seated in the front passenger seat of the vehicle, and Alejandro Cervantes-Ramiro was seated in the driver seat of the vehicle.

14.     A Sacramento County Sheriff's Department patrol vehicle pulled-up behind the vehicle occupied by Plaintiff MARQUISE CHAPPLE and Alejandro Cervantes-Ramiro. The patrol vehicle was occupied by three law enforcement officers employed by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, including Defendant NATHANIEL DAVIS and Brian Johnson and K. Olsen, detectives.

15.     The patrol vehicle activated lights associated with a traffic stop.

16.     In response to the patrol vehicle's lights, Alejandro Cervantes-Ramiro produced a handgun which he tossed to Plaintiff MARQUISE CHAPPLE. Alejandro Cervantes-Ramiro urgently instructed Plaintiff MARQUISE CHAPPLE, "Run!"

17.     Defendant NATHANIEL DAVIS exited the patrol vehicle while holding a flashlight in his left hand.

18.     Defendant NATHANIEL DAVIS walked towards the passenger door of the vehicle occupied by Plaintiff MARQUISE CHAPPLE and Alejandro Cervantes-Ramiro.

19.     When Defendant NATHANIEL DAVIS was approximately 15 feet from the detained vehicle, Plaintiff MARQUISE CHAPPLE opened the passenger door of the vehicle with his right hand.

20.     Plaintiff MARQUISE CHAPPLE held a cellphone in his right hand, as he turned his body to the right to exit the vehicle. Plaintiff MARQUISE CHAPPLE held the gun in his left hand.

21.     Plaintiff MARQUISE CHAPPLE immediately pivoted to his right and ran around the back of the vehicle, passing in front of Defendant NATHANIEL DAVIS in attempt to flee the scene.

22.     Plaintiff MARQUISE CHAPPLE never pointed the weapon at Defendant NATHANIEL DAVIS or anyone else, and did not pose a threat to anyone.

23.     Defendant NATHANIEL DAVIS immediately unholstered his firearm with his right hand and pointed it at Plaintiff MARQUISE CHAPPLE.

24.    Plaintiff MARQUISE CHAPPLE turned his back to Defendant NATHANIEL DAVIS, as he ran around the back of the vehicle.

25.    Plaintiff MARQUISE CHAPPLE ran away from Defendant NATHANIEL DAVIS and the patrol vehicle occupied by Brian Johnson and K. Olsen.

26.    Defendant NATHANIEL DAVIS chased Plaintiff MARQUISE CHAPPLE from behind, approximately 15 feet behind him.

27.    Defendant NATHANIEL DAVIS held his firearm in an undisciplined manner, one-handed with his outstretched right arm, as he chased Plaintiff MARQUISE CHAPPLE through the parking lot.

28.    Plaintiff MARQUISE CHAPPLE ran approximately seven steps, when Defendant NATHANIEL DAVIS began wildly to shoot three bullets at Plaintiff MARQUISE CHAPPLE's back.

29.    Two of the three rounds fired by Defendant NATHANIEL DAVIS struck Plaintiff MARQUISE CHAPPLE. The first bullet struck Plaintiff MARQUISE CHAPPLE in the left buttock with the bullet lodging in his leg. The bullet caused Plaintiff MARQUISE CHAPPLE to stagger and begin to fall face-first to the ground. The second bullet struck Plaintiff MARQUISE CHAPPLE on the right side of his upper back. The bullet travelled through Plaintiff MARQUISE CHAPPLE's body and exited the right side of his chest.

30.    At most, Defendant NATHANIEL DAVIS suspected that Plaintiff MARQUISE CHAPPLE possessed a firearm while he was attempting to flee the scene. But Plaintiff MARQUISE CHAPPLE presented no threat when Defendant NATHANIEL DAVIS shot him in the back multiple times.

31.    Defendant NATHANIEL DAVIS never warned Plaintiff MARQUISE CHAPPLE that he would shoot nor offered Plaintiff MARQUISE CHAPPLE an opportunity to surrender.

32.    Defendant NATHANIEL DAVIS shot Plaintiff MARQUISE CHAPPLE within three seconds of Plaintiff MARQUISE CHAPPLE exiting the vehicle.

33.    Defendant NATHANIEL DAVIS had alternative methods available to apprehend, or attempt to apprehend, Plaintiff MARQUISE CHAPPLE. Plaintiff MARQUISE CHAPPLE was outnumbered three-to-one by the officers at the scene.

4

34.     Defendant NATHANIEL DAVIS failed to utilize appropriate law enforcement techniques and tactics, including by failing to provide a warning prior to shooting Plaintiff MARQUISE CHAPPLE and by shooting Plaintiff MARQUISE CHAPPLE in the back when he was non-threatening.

35.     Defendant NATHANIEL DAVIS's actions and inactions prior to and during the shooting were non-compliant with California Peace Officer Standards and Training ("POST") and Sacramento County Sheriff's Department ("SCSD") policies, training, and standards, including: POST Learning Domain 20 (Use of Force/Deescalation); POST Learning Domain 26 (Critical Incidents); POST Learning Domain 33 (Arrest Methods/Defensive Tactics); SCSD General Order 2-05 (Use of Firearms); SCSD General Order 2-11 (Use of Force); and the SCSD Field Training Guide.

36.     Plaintiff MARQUISE CHAPPLE collapsed face-first to the ground and struck his head on a raised planter in the parking lot.

37.     Several bystanders standing across the parking lot observed Defendant NATHANIEL DAVIS shoot Plaintiff MARQUISE CHAPPLE multiple times in the back as he was fleeing and non-threatening suspect and the observers verbally protested the shooting immediately after it occurred.

38.     Defendant NATHANIEL DAVIS approached Plaintiff MARQUISE CHAPPLE's limp body which was lying face-first on the ground.

39.     Plaintiff MARQUISE CHAPPLE's blood was on the back of his leg and leaking out from under his body.

40.     Defendant NATHANIEL DAVIS twisted Plaintiff MARQUISE CHAPPLE's arms behind his back and drove his knee and bodyweight into Plaintiff MARQUISE CHAPPLE's back.

41.     Brian Johnson kneeled down next to Defendant NATHANIEL DAVIS.

42.     Defendant NATHANIEL DAVIS feigned ignorance that he had shot Plaintiff MARQUISE CHAPPLE by asking, "You hit? Are you hit? Are you hit?"

43.     Brian Johnson immediately responded, "He's leaking out. He's leaking out."

44.     Rather than provide medical attention, or discern where Plaintiff MARQUISE CHAPPLE had been shot, Defendant NATHANIEL DAVIS applied handcuffs to Plaintiff MARQUISE CHAPPLE's arms behind his back.

45.     Defendant NATHANIEL DAVIS failed to utilize appropriate law enforcement techniques

5

and post-shooting tactics, including by handcuffing Plaintiff MARQUISE CHAPPLE's arms behind his back, after Plaintiff MARQUISE CHAPPLE had been critically injured by Defendant NATHANIEL DAVIS's gunshots. Defendant NATHANIEL DAVIS actions and inactions were non-compliant with California Peace Officer Standards and Training ("POST") and Sacramento County Sheriff's Department ("SCSD") policies, training, and standards, including: POST Learning Domain 20 (Use of Force/Deescalation); POST Learning Domain 26 (Critical Incidents); POST Learning Domain 33 (Arrest Methods/Defensive Tactics); POST Learning Domain 34 (First Aid, CPR, and AED); SCSD Operations Order 2-02 (Use of Restraint Devices); SCSD General Order 2-11 (Use of Force); and the SCSD Field Training Guide.

46.    Plaintiff MARQUISE CHAPPLE was transported by ambulance to the U.C. Davis Medical Center where he received treatment for his gunshot wounds. Plaintiff MARQUISE CHAPPLE was hospitalized for approximately a week before he was booked into the Sacramento County Main Jail.

47.    At the scene of the shooting, Defendant NATHANIEL DAVIS stated that he "fired three rounds at [Plaintiff MARQUISE CHAPPLE] who was running northeast away from [Defendant NATHANIEL DAVIS] at an approximate distance of five feet."

48.    Two days later, on March 7, 2024, Defendant NATHANIEL DAVIS provided a post-incident statement, in the presence of his attorney wherein he falsely reported the circumstances of his shooting Plaintiff MARQUISE CHAPPLE, in an attempt to justify his excessive use of deadly force and in contradiction to his and Johnson's body-worn camera recording of the shooting. For example, Defendant NATHANIEL DAVIS falsely reported:

(a)    "I could see the weapon was pointed in my direction." In fact, Plaintiff MARQUISE CHAPPLE never pointed the weapon in the direction of Defendant NATHANIEL DAVIS or anyone else.

(b)    "He is, swinging his arms frantic- -- frantically is a bad word. Maybe, dramatically like a sprinter would. So it's high up in the air and then really far back, as he's swinging his arms trying to flee. I was fearful still at this point that at any second the gun could come up, from the -- the point in which it was coming back towards us that it would come back. . . . [H]e's swinging the weapon back in my general direction…" In fact, Plaintiff MARQUISE CHAPPLE never swung his arms dramatically

1  like a sprinter nor far back in a manner that the weapon was a threat to Defendant NATHANIEL DAVIS
2  or anyone else.

3       49.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S
4  DEPARTMENT, and JIM COOPER failed to take any adverse action against Defendant NATHANIEL
5  DAVIS related to the shooting of Plaintiff MARQUISE CHAPPLE.

6                          **POLICY / CUSTOM ALLEGATIONS**

7       50.     Defendant JIM COOPER, in his capacity as Sheriff, is and was a final policymaking
8  authority for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S
9  DEPARTMENT, including as it relates to the training, supervision, and discipline of law enforcement
10  personnel under his command. Sacramento County Sheriff's Department, General Order 1-15 (Sheriff's
11  Executive Staff). Defendant JIM COOPER has served as Defendants COUNTY OF SACRAMENTO
12  and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's Sheriff since December 2022.

13       51.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S
14  DEPARTMENT, and JIM COOPER knew or should have known that Defendant NATHANIEL
15  DAVIS's officer-involved shooting of Plaintiff MARQUISE CHAPPLE was unlawful, including based
16  on the body-worn camera footage of the shooting which demonstrated that Defendant NATHANIEL
17  DAVIS shot Plaintiff MARQUISE CHAPPLE multiple times in the back while he was non-threatening
18  and fleeing; and where "[i]t is clearly established law that shooting a fleeing suspect in the back violates
19  the suspect's Fourth Amendment rights," *Foster v. City of Indio*, 908 F.3d 1204, 1211 (9th Cir. 2018)
20  (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

21       52.     Unreasonable Force: Defendants COUNTY OF SACRAMENTO, SACRAMENTO
22  COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER failed adequately to train, supervise, and
23  discipline officers under their command in critical areas related to unreasonable force, including
24  Defendant NATHANIEL DAVIS. For example:

25            (a)     the application of excessive and unreasonable use of force against non-threatening
26  persons;

27            (b)     the inadequate training of personnel with respect to the use of force;

28            (c)     the employment, retention, supervision, training, control, assignment, and disciple

7

1   of personnel with dangerous propensities for abusing authority;

2          (d)   the maintenance of inadequate procedures for reporting, supervising, investigating,

3   reviewing, disciplining, and controlling misconduct by personnel;

4          (e)   the inadequate or non-existent discipline of personnel, including imposition of

5   discipline that is disproportional to the magnitude of the misconduct and fails to discourage future

6   misconduct or is tantamount to encouraging misconduct ("slaps on the wrist");

7          (f)   the announcement that unjustified uses of force are "within policy," including

8   incidents that are later determined in court or implied through settlement to be non-compliant with policy

9   or unlawful;

10          (g)   the inadequate investigation of uses of force, including refusal to consider relevant

11   witness and evidence;

12          (h)   the untimely, delayed, or prolonged investigation of uses of force, such that

13   determination of culpability, if any, is returned after the period of time during which effective corrective

14   action or meaningful discipline can be taken;

15          (i)   the refusal to discipline, terminate, or retrain personnel, where uses of force are

16   determined in court or implied through settlement to be non-compliant with policy or unlawful;

17          (j)   the encouragement, accommodation, or facilitation of a "blue code of silence,"

18   "blue shield," "blue wall," "blue curtain," "blue veil," "blue line," "turn a blind eye," or "code of

19   silence," pursuant to which personnel do not report errors, misconduct, or crimes and, if questioned about

20   an incident of misconduct involving another officer, claim ignorance of misconduct; and

21          (k)   the maintenance of a policy of inaction and an attitude of indifference towards

22   ongoing law enforcement use of force incidents, including by failing to discipline, retrain, investigate,

23   terminate, and recommend personnel for criminal prosecution who participate in unlawful uses of force.

24          53.   <u>Unreasonable Force</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO

25   COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER knowingly participated in, acquiesced to,

26   and/or were deliberately indifferent to the creation and maintenance of a culture permitting or

27   encouraging personnel's use of unreasonable and excessive force, including Defendant NATHANIEL

28   DAVIS. For example:

(a)      On November 20, 2023, KyrieAnna Liles, an unarmed and mentally-ill woman, was shot by Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's personnel, including deputies Matthew Bollinger and Spencer Hettema. Sacramento County Sheriff's Department, Report No. 23-369374. The subject was known to be experiencing a mental health episode. The deputies contacted the subject in the driveway of her residence, as she sat inside of her vehicle. The deputies reached into the subject's car, unprovoked, and attempted to drag her from the vehicle, without warning. The subject became fearful and fled the scene in her vehicle. As the subject drove away from the deputies, they opened-fire with pistols aimed at the back of the subject's vehicle, wildly firing into the vehicle and nearby homes in the residential neighborhood. The subject's vehicle was riddled with bullets, one of which struck the subject's right arm. The deputies falsely reported that the subject attempted to run-over one of the deputies with her vehicle, and charged her with attempted murder. Following a criminal trial, the subject was acquitted. *People v. Liles*, No. 23FE018938 (Sacramento Cnty. Super. Ct.). A civil rights lawsuit was filed. *Liles v. County of Sacramento*, No. 2:24-cv-00416-KJM-CKD (E.D. Cal.). The case remains pending.

(b)      On October 21, 2017, Mayco Rodrique was arrested and booked into the Sacramento County Main Jail by Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's personnel, including Jarrod Hopeck and Jeffrey Wilson. Deputy Hopeck intentionally twisted and broke the subject's arm, during the jail intake process. The subject was confined to a "sobering" cell and denied access to medical staff for 20 minutes, while deputy Hopeck taunted him through a window on the cell door. The incidents were captured on the jail's surveillance cameras. A citizen complaint was filed. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT "exonerated" deputy Hopeck. Sacramento County Sheriff's Department, Report No. 17-303197. A civil rights lawsuit was filed. *Rodrique v. County of Sacramento*, No. 2:17-cv-02698-WBS-EFB (E.D. Cal.). The case was settled pre-trial for $97,500. The lawsuit resulted in disclosure of numerous citizen complaints and dispositions from Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT. <https://www.sacbee.com/opinion/article238722483.html>. The citizen complaint files revealed Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT and sheriff Scott Jones were "concealing the violent abuse of inmates by deputies in his

9

jail and allowing the guilty deputies to remain in uniform." For example, sheriff Scott Jones overruled a recommendation to discipline a subordinate who was captured on camera using excessive use-of-force; and "exonerated" numerous meritorious citizen complaints against personnel. <https://www.sacbee.com/news/investigations/article238544198.html>.

(c)     On May 8, 2017, 32-year-old Mikel McIntyre, an unarmed and mentally-ill Black man, was shot and killed by Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's personnel, including deputies Jeffrey Wright, Ken Becker, and Gabriel Rodriguez. Sacramento County Sheriff's Department, Report No. 17-150089. The subject was known to be experiencing a mental health episode, where deputies conducted a mental health contact with the subject hours earlier. During the subsequent contact, the subject threw a rock and attempted to flee from the deputies. In response, the deputies shot at the subject with 26 bullets, killing him. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT deemed the deputies' conduct to be within policy. A civil rights lawsuit was filed. *N.M. v. County of Sacramento*, No. 2:18-cv-01830-WBS-KJN (E.D. Cal.). The case was settled pre-trial for $1,725,000. The Sacramento County Inspector General's Office issued an officer-involved shooting review of the incident. <https://inspectorgeneral.saccounty.net/Documents/McIntyre_OIS_Report.pdf>. Therein, the inspector general found that the deputies fired an "excessive, unnecessary" number of rounds during the shooting. In response to the critical report, Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT and sheriff Scott Jones retaliated against the inspector general by locking the inspector general out of agency offices and jail facilities and preventing further oversight of official misconduct.

(d)     On November 24, 2016, 17-year-old Logan Augustine, a mentally ill boy, was shot and killed by Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's personnel, including deputy James Schaefers. Sacramento County Sheriff's Department, Report No. 16-354725. The subject experienced a mental health episode inside of a 7-11 convenience store and called 9-1-1. The subject was cornered inside of the store and held a pocketknife to his own throat. A deputy fired a less-lethal round at the subject, which caused him to flinch. In response to the subject's flinching, deputy Schaefers fired a gunshot into the subject's neck, while he was non-threatening, killing him. Defendant

1   SACRAMENTO COUNTY SHERIFF'S DEPARTMENT deemed the deputy's conduct to be within

2   policy. A civil rights lawsuit was filed. *Augustine v. County of Sacramento*, No. 2:17-cv-02605-WBS-AC

3   (E.D. Cal.). The case was settled pre-trial.

4            (e)      On September 23, 2016, Jesse Attaway, a mentally ill man, was shot and killed by

5   Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's personnel, including deputies

6   Andrew Cater and Bao Mai. Sacramento County Sheriff's Department, Report No. 16-285423. The

7   subject entered and attempted to enter multiple homes but left without causing any harm to the people or

8   property. The deputies were dispatched to the scene and found the subject walking away. The subject

9   refused the deputies' commands to stop. The deputies exited their patrol vehicle and approached the

10  subject. The subject raised his arms, clasped his hands together in front of him, cocked his head between

11  his arms, and screamed "Ahhh!" The subject's mental illness was apparent. Deputy Cater yelled

12  "Coming at me!," and the deputies fired at least fourteen shots at the subject, killing him. Defendant

13  SACRAMENTO COUNTY SHERIFF'S DEPARTMENT deemed the deputies' conduct to be within

14  policy. A civil rights lawsuit was filed. *Rivera v. Cater*, No. 2:18-cv-00056-WBS-EFB (E.D. Cal.). The

15  case was settled pre-trial.

16           (f)      On January 17, 2012, 24-year-old Johnathan Rose, a mentally ill man, was shot

17  and killed by Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's personnel,

18  including deputy David McEntire. Sacramento County Sheriff's Department, Report No. 12-12655. The

19  subject was schizophrenic and experienced a mental health episode, prompting his father to call 9-1-1 to

20  assist with administration of the subject's medications. Prior to the arrival of officers, the subject took his

21  medications and went to sleep in his bed. Deputy McEntire arrived at the subject's home, "brushed"

22  aside the subject's father, and approached the subject's bed where he was sleeping. Deputy McEntire

23  woke the subject and ordered him to lie face down on the ground to be handcuffed. The subject refused

24  to lie on the ground but presented his hands to be handcuffed. In response, deputy McEntire struck the

25  subject on the head with a flashlight, prompting an altercation. Deputy McEntire was in control and

26  winning the fight when, without warning or provocation, he fatally shot the subject three times at point

27  blank range, killing him. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT deemed

28  the deputy's conduct to be within policy. A civil rights lawsuit was filed. *Rose v. County of Sacramento*,

No. 2:13-cv-01339-TLN-EFB (E.D. Cal.). The case settled post-trial following a $6,500,000 jury verdict for the plaintiffs.

(g)     Paul "Scotte" Pfeifer was a sheriff's deputy employed by Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and sheriff Scott Jones. Deputy Pfeifer utilized excessive force against persons he encountered on multiple occasions, including by striking them with a department-issued flashlight. Deputy Pfeifer's assaults were documented and captured on recordings on multiple occasions. For example, deputy Pfeifer's assaults resulted in multiple lawsuits, each of which Defendant COUNTY OF SACRAMENTO settled for substantial amounts paid to injured plaintiffs. *Treshchuk v. McGinness*, No. 2:09-cv-00691-MCE-EFB (E.D. Cal.) (Deputy Pfeifer struck the plaintiff in her legs multiple times with a flashlight; case settled pre-trial for $20,000); *Reyes v. County of Sacramento*, No. 34-2015-00184139-CU-CR-GDS (Sacramento Cnty. Super. Ct.) & No. 2:15-cv-02213-JAM-DB (E.D. Cal.) (Deputy Pfeifer was recorded assaulting the plaintiff in the middle of street, including by striking him multiple times with a flashlight; case was settled pre-trial for $200,000); *Donohue v. County of Sacramento*, No. 2:15-cv-01488-CKD (E.D. Cal.) (Deputy Pfeifer was recorded assaulting the plaintiff while he was sitting in the driver's seat of a vehicle surrendering; case settled pre-trial for $150,000); *see* <https://www.sacbee.com/news/investigations/the-public-eye/article107619287.html>. Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and sheriff Scott Jones failed adequately to supervise, re-train, or discipline deputy Pfeifer following each of the incidents of misconduct and he was retained as an employee.

(h)     Several jury verdicts have been entered against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and/or their personnel, where excessive and unreasonable force was proven at trial. For example: *Reese v. County of Sacramento*, No. 2:13-cv-00559-WBS-DB (E.D. Cal.) (jury verdict against sheriff's deputy who used excessive force when he shot a man inside of his home upon opening a door in response to the deputy's command); *Jones v. County of Sacramento*, No. 2:09-cv-1025-DAD (E.D. Cal.) (jury verdict for excessive force against five sheriff's deputies); *Antoine v. County of Sacramento*, No. 2:06-cv-01349-WBS-GGH (E.D. Cal.) (jury verdict for excessive force against five sheriff's deputies); *Hunter v. County*

12

*of Sacramento*, No. 2:06-cv-00457-GEB-AC (E.D. Cal.) (jury verdict for policy or custom of subjecting inmates to excessive force against the County of Sacramento); *Tubbs v. Sacramento County Jail*, No. 2:06-cv-00280-LKK-GGH (E.D. Cal.) (jury verdict for excessive force and integral participation against four sheriff's deputies); *Johnson v. Sacramento County*, No. 2:06-cv-00169-RRB-GGH (E.D. Cal.) (jury verdict for excessive force against multiple sheriff's deputies).

(i)     Numerous settlements have been paid by Defendant COUNTY OF SACRAMENTO, resulting from misconduct by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, sheriff Scott Jones, and/or their personnel, including to settle litigation where excessive and unreasonable force was alleged and could have been proven, if tried. For example: *Bencomo v. County of Sacramento*, 2:23-cv-00440-DAD-JDP (E.D. Cal.) (settlement of action alleging that a sheriff's deputy sicced a police canine on a sleeping suspect located inside of a bedroom, department found the actions in compliance with policies); *Flemmings v. County of Sacramento*, No. 2:20-cv-00500-WBS-AC (E.D. Cal.) (settlement of action alleging that sheriff's deputies unlawfully pulled-over the plaintiff's vehicle, pulled him from the vehicle, and slammed and pinned him face-first onto the roadway); *Soto v. County of Sacramento*, No. 2:19-cv-00910-TLN-DB (E.D. Cal.) (settlement of action alleging a sheriff's deputy ignored an injured inmate's requests for medical assistance, hog-tied his arms and legs, and left him to die on the floor of a holding cell); *Mitchell v. County of Sacramento*, No. 2:18-cv-03252-WBS-EFB (E.D. Cal.) (settlement of action alleging a sheriff's deputy slammed the plaintiff's head against a wall causing a concussion, breaking a tooth, and splitting her lip); *Dunn v. County of Sacramento*, No. 2:18-cv-02425-JAM-CKD (E.D. Cal.) (settlement of action alleging that two sheriff's deputies unlawfully pulled-over the plaintiff's vehicle, pulled her from the vehicle, struck her in the face several times with fists and a flashlight, and broken her arm); *Reynolds v. County of Sacramento*, No. 2:18-cv-01150-TLN-KJN (E.D. Cal.) (settlement of action alleging that several sheriff's deputies falsely arrested and "paraded" the handcuffed plaintiffs before releasing them without charges); *Abbott v. County of Sacramento*, No. 2:17-cv-02698-WBS-EFB (E.D. Cal.) (settlement of action alleging that a sheriff's deputy broke the plaintiff's foot and sprained his wrist during jail booking); *Ennis v. County of Sacramento*, No. 2:17-cv-02052-KJM-EFB (E.D. Cal.) (settlement of action alleging that a sheriff's deputy broke the plaintiff's left wrist, after the plaintiff had

13

1   specifically warned the sheriff's deputy that her wrist had been previously injured); *Williams v. County of*

2   *Sacramento*, No. 2:17-cv-01726-JAM-EFB (E.D. Cal.) (settlement of action alleging that two sheriff's

3   deputies falsely arrested and employed excessive force against the plaintiffs); *Cain v. City of*

4   *Sacramento*, No. 2:17-cv-00848-JAM-DB (E.D. Cal.) (settlement of action alleging that a sheriff's

5   deputies held the injured plaintiff face-down on the ground while forcibly stripping and verbally abusing

6   him); *McCormack v. County of Sacramento*, No. 2:16-cv-01303-WBS-AC (E.D. Cal.) (settlement of

7   action alleging that a sheriff's deputy slammed the plaintiff's head into a wall); *DeVard v. County of*

8   *Sacramento*, No. 2:16-cv-00159-JAM-CKD (E.D. Cal.) (settlement of action alleging that a sheriff's

9   deputy was captured on a surveillance camera punching the plaintiff in his face and slammed him into a

10   patrol vehicle); *Shannon v. County of Sacramento*, No. 2:15-cv-00967-KJM-DB (E.D. Cal.) (settlement

11   of action alleging excessive use of force by two sheriff's deputies who shot and killed a man carrying

12   airsoft replica weapons); *Aviña-Luna v. County of Sacramento*, No. 2:14-cv-01295-TLN-DAD (E.D.

13   Cal.) (settlement of action alleging that a sheriff's deputy broke the plaintiff's right arm while applying

14   arm-hold); *Salinas v. County of Sacramento*, No. 34-2013-00152323 (Sacramento Cnty. Super. Ct.)

15   (settlement of action alleging that a sheriff's deputy broke the plaintiff's right arm while applying arm-

16   hold); *Lundell v. County of Sacramento*, No. 2:12-cv-02832-MCE-AC (E.D. Cal.) (settlement of action

17   alleging that a sheriff's deputy broke the plaintiff's right arm while applying handcuffs); *Harmon v.*

18   *County of Sacramento*, No. 2:12-cv-02758-TLN-AC (E.D. Cal.) (settlement of action alleging that

19   sheriff's deputies shot a non-threatening man with a taser then fired 18 gunshots causing his death);

20   *Gonsalves v. County of Sacramento*, No. 2:11-cv-02506-WBS-DAD (E.D. Cal.) (settlement of action

21   alleging that a sheriff's detective went to the plaintiff's home and "sucker-punched" him, "without any

22   provocation or warning"); *Abdallah v. County of Sacramento*, No. 2:11-cv-00625-MCE-KJN (E.D. Cal.)

23   (settlement of action alleging that five sheriff's deputies beat the plaintiff into unconsciousness, causing a

24   lacerated liver, multiple cracked ribs, a broken nose, and facial lacerations); *Duran v. County of*

25   *Sacramento*, No. 2:10-cv-03301-GEB-GGH (E.D. Cal.) (settlement of action alleging that a sheriff's

26   deputy broke the plaintiff's left arm while applying arm-hold); *Jaquez v. County of Sacramento*, No.

27   2:10-cv-01040-MCE-DAD (E.D. Cal.) (settlement of action alleging that sheriff's deputies beat the

28   plaintiff, causing a fractured right elbow and leaving a boot-imprint on his face).

54. <u>Training, Supervision, and Discipline</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER only impose minimal, insignificant, and untimely discipline against subordinates even when misconduct was documented and acknowledged, and only issue discipline when misconduct is documented on recordings. For example, in addition to those incidents described above and incorporated herein:

(a)    On March 16, 2023, deputy Antero Reyes incorrectly attempted to move an inmate into the cell of another mentally-ill inmate who was assigned to total-separation ("T-Sep") housing at the Sacramento County Main Jail. The subject informed deputy Reyes about his housing status, to prevent the inmate from entering his cell and presenting a potential threat. In response, deputy Reyes threatened the subject, including stating: "You square up on me, we're going to fight"; "Back the fuck up"; "Don't be a bitch now"; and "Don't fucking square up on me, I'll fuck you up." The subject asked deputy Reyes if he was physically threatening him, to which deputy Reyes responded, "Yeah, let's go." Deputy Reyes assaulted the inmate, including punching him in the face four times in rapid succession. Another deputy present during the incident told deputy Reyes, "Chill, chill, chill," in attempt to stop the deputy-on-inmate assault. After the incident, deputy Reyes prepared a false report of the incident which attempted to justify his use of force and misrepresented the number of punches he utilized against the inmate. An investigation "sustained" the excessive force allegation. Sacramento County Sheriff's Department, Professional Standards Division No. 2023PSD-0170. On June 13, 2023, captain Vanessa Vaden recommended deputy Reyes be suspended for 40 hours. On June 20, 2023, chief deputy Dan Donelli recommended deputy Reyes be suspended for 40 hours. On July 26, 2023, Defendant JIM COOPER "affirmed" the proposed discipline.

(b)    On September 17, 2022, Salvador Garcia Jr. was subject to excessive force by Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's personnel, including deputies Dylan Black and Royce Austin. Sacramento County Sheriff's Department, Report No. 22-277217. The subject was riding his bicycle when he was accosted by deputy Black who ordered him to "stop." The subject turned his bike on the wet grass and slipped to the ground. Deputy Black deployed his canine partner, Roscoe, which mauled the subject's right forearm. The subject screamed in pain, as deputy Black unsuccessfully attempted to handcuff the subject's arms while Roscoe continued mauling his right arm.

1    Deputy Black tried to handcuff the subject's right arm but could not get Roscoe to stop mauling on the

2    subject's arm. Eventually, deputy Black ripped Roscoe off of the subject's arm, further injuring him, as

3    blood was spurting from the arm from where the subject sustained a severed artery. The subject was left

4    lying on the ground bleeding from a severed artery, while deputy Austin failed to provide necessary

5    medical care, including attempting to stop the bleeding from the subject's arm. The subject was

6    hospitalized for several days and underwent reconstructive surgery as a result of the injuries sustained.

7    Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT deemed deputies' conduct to be

8    within policy. A civil rights lawsuit was filed. *Garcia v. County of Sacramento*, No. 2:23-cv-00899-

9    DAD-KJN (E.D. Cal.). The case remains pending.

10              (c)      On May 8, 2022, deputy Freddy Martinez conducted a traffic stop on a vehicle

11   driven by Donald Burney. The subject was experiencing a medical emergency and opened the door of his

12   vehicle. Deputy Martinez observed that the subject was "talking rapidly and somewhat incoherently,"

13   was "unsteady on his feet," and made "spontaneous hand movements." Deputy Martinez grabbed at the

14   subject to apply handcuffs to his arms but he fell forward, landing on the ground. Deputy Martinez

15   handcuffed the subject's arms behind his back. Deputy Martinez then "kept BURNEY on the ground

16   with [his] knee on top of BURNEY's lower back/hip area" using "weight on BURNEY's lower back/hip

17   area…" Deputy Martinez confined the subject to the back of his patrol vehicle and conducted a records

18   research which revealed "BURNEY's diabetic history." Deputy Martinez asked the subject if he was

19   having a diabetic emergency, to which the subject responded, "Yes." The subject had a diabetic monitor

20   on his arm controlled by a cell phone application which "showed BURNEY's blood sugar was at 60."

21   The subject instructed deputy Martinez to get candy from his vehicle, which raised his blood sugar to 90-

22   to-100. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT deemed the deputy's

23   conduct to be within policy.

24              (d)      On August 1, 2021, Larry Weigle was involved in a vehicular pursuit that ended

25   when he exited his vehicle and fled on foot. The subject was chased-down and pushed to the ground by

26   deputy Shayn Bowen. Deputy Bowen mounted the subject and pulled his arms behind his back to apply

27   handcuffs. The subject surrendered to deputy Bowen's efforts to arrest him and did not resist. Deputies

28   Hunter Greenwood and Brittany Linde arrived on scene, shortly after Larry Weigle was taken to the

16

ground. Deputy Greenwood ran towards the subdued subject and deputy Bowen. Deputy Greenwood yelled out, "Get him! Go!" Deputy Greenwood kicked the subject twice with his foot, including raising his foot and stomping on the subject's head. The subject was lying motionless and compliant on the ground with his arms behind his back, at the time that deputy Greenwood kicked and stomped him. Deputy Greenwood's stomp caused the subject's head to strike the ground, cutting his head. Deputies Bowen and Linde observed deputy Greenwood assault the subject, without justification or cause, but said and did nothing in response. Instead, deputy Linde created a false pretext for deputy Greenwood's assault, including by stating, "Give me your hand!" The subject responded, "You have it!" Then, deputy Linde stated, "Stop resisting!" The subject responded, "I'm not resisting!" Then, deputy Linde stated, "Relax!" The subject responded, "I'm relaxed!" Later that night, deputy Greenwood, a field training officer, discussed the incident with deputy Mark Hampton, his trainee. Deputy Greenwood briefly paused during the conversation with deputy Hampton to ask if he was "still hot"—*i.e.*, if deputy Hampton was currently recording their conversation with his body-worn camera. Deputy Hampton responded by touching his body-worn camera, believing that he had deactivated it, and stating, "No." Deputy Greenwood stated, "Make sure it's off." Deputy Greenwood believed that deputy Hampton had turned-off his body-worn camera but, by accident, he had not done so. Immediately thereafter, deputy Greenwood continued to discuss the incident, bragging: "I kaboomed him twice. Gave him the good ol' boot. I mean, he was pretty much done at that point. It wasn't, like—I didn't, like, curb stomp him. I just, like, threw him to the ground and kicked him on the torso once or twice." At the scene, deputy Linde admitted to her supervisor, sergeant David Cueno, that deputy Greenwood kicked the subject. Deputy Linde also admitted that the officers did not have sufficient evidence to charge the subject with violation of California Penal Code § 69. But sergeant Cueno, deputy Bowen, and deputy Linde each failed to report deputy Greenwood's use-of-force, as required by Sacramento County Sheriff's Department's policy. Deputy Linde submitted a report falsely describing the incident, including: "WEIGLE was actively resisting by keeping his right arm tucked under his body. . . . Deputy Greenwood #684 (unit 67F2) responded and assisted Deputy Bowen and I in placing WEIGLE in handcuffs." Specifically, deputy Linde omitted from her report that deputy Greenwood had assaulted the subject by stomping him twice. The subject filed a citizen complaint. Sacramento County Sheriff's Department, Professional

17

Standards Division No. 2022PSD-0187. During the investigation of the complaint, deputy Linde admitted that she falsely reported the subject's hands were "tucked under his body" when, if fact, they were behind his back, and, "if someone's got their hands behind their back and [an officer] run[s] up and just kick[s] somebody," that that force is "not warranted." Sergeant Cueno was also found to have failed to report use-of-force incidents on multiple occasions, including in this case. On October 18, 2022, chief deputy Santos Ramos "recommended Deputy Greenwood receive a 40-hour suspension" and "recommended Sergeant Cueno receive a 20-hour suspension." On November 28, 2022, undersheriff James Barnes rejected the recommendations and "EXONERATED" deputy Greenwood. On December 7, 2022, Defendant JIM COOPER "affirmed" undersheriff Barnes' exoneration. On June 9, 2022, the subject filed a civil rights lawsuit in connection with the incident. *Weigle v. County of Sacramento*, No. 2:22-cv-01000-MCE-JDP (E.D. Cal.). Defendant COUNTY OF SACRAMENTO settled the case pre-trial for $175,000.

(e)      From December 7, 2020, through January 12, 2021, a sheriff's deputy improperly accessed the Sacramento County Sheriff's Department's Jail Person Files ("JPF") information database at least 22 times, and Known Persons File ("KPF") information database at least three times, for personal and non-legitimate reasons. (The investigative search for the deputy's improper access was limited to the period from November 1, 2020, to January 12, 2021.) The deputy conducted the unauthorized inquiries to learn more about a suspect in the alleged assault of a family member. An anonymous citizen complaint was filed. Sacramento County Sheriff's Department, Professional Standards Division No. 2020PSD-0661. The complaint was deemed "Unfounded." Chief deputy Leeannedra Marchese recommended that the deputy be suspended from his position as deputy sheriff for a period of 20 hours. On August 9, 2021, sheriff Scott Jones "deemed appropriate" the recommended discipline. Subsequently, the deputy was involved in an officer-involved death incident where he and fellow officers smothered a mentally-ill Black man to death. *Estate of Stingley v. County of Sacramento*, No. 2:23-cv-00255-TLN-AC (E.D. Cal.).

(f)      On March 10, 2020, deputy Spencer Wright was a "ride-along" participant with a Post-Release Community Supervision ("PRCS") joint task force. Deputies conducted a traffic stop on a vehicle driven by Brandell Sampson. The subject was directed to exit his vehicle and to walk backwards

18

with his hands on his head, and he complied. Deputy Wright approached the subject from behind and deployed a taser against him, without justification. Then, deputy Wright jumped and kicked the subject in his back. The subject fell to the ground. Then, deputy Wright struck the subject three time on his head with the butt of the taser handle. An investigation "sustained" the excessive force allegations. Sacramento County Sheriff's Department, Professional Standards Division No. 2020PSD-0149. On July 6, 2020, captain James Barnes recommended an 80-hour suspension. On July 10, 2020, chief deputy Chet Madison recommended an 80-hour suspension. On July 30, 2020, undersheriff Erik Maness recommended an 80-hour suspension. On August 20, 2020, sheriff Scott Jones "affirmed" the proposed discipline.

(g)    On February 6, 2020, multiple deputies, including sergeant Brannon Polete and deputy Kyle Zimmerman, entered the private garage of a subject, grabbed him, and tackled him to the ground. The deputies made disparaging remarks to the subject, including calling him a "motherfucker." Sergeant Polete instructed the subject to "Say you're fucking sorry," then, when the subject did so, stated, "You are sorry, motherfucker. I am the sergeant. You're a drunk little fuck. You are going to go to jail and you will be fucking pussy in jail." When the subject asked, "What is my crime?," sergeant Polete responded, "Because you're a fucking asshole." The deputies grinned and fist-bumped with sergeant Polete after assaulting the subject, demonstrating a "celebratory" demeanor. Deputy Zimmerman attempted to mute the microphone on his belt during these interactions, in attempt to cover-up the deputies' misconduct. (Later, deputy Zimmerman lied to investigators about his ignorance related to the belt microphone functionality.) A deputy unplugged a cord connected to a surveillance camera in the subject's garage, in attempt to cover-up the deputies' misconduct. An investigation "sustained" the misconduct allegations. Sacramento County Sheriff's Department, Professional Standards Division No. 2020PSD-0057. On March 30, 2020, captain Todd Henry recommended no discipline for some deputies, a 10-hour suspension for the deputy that unplugged the surveillance camera, termination of deputy Zimmerman, and demotion of sergeant Polete to deputy—based on the officers' histories of misconduct in this case and others. On April 20, 2020, chief deputy Chet Madison recommended no discipline for some deputies, a 20-hour suspension for the deputy that unplugged the surveillance camera, termination of deputy Zimmerman, and termination of sergeant Polete. On May 8, 2020, undersheriff Erik Maness

19

recommended the 120-hour suspension of deputy Zimmerman, and the 160-hour suspension and demotion of sergeant Polete. On June 15, 2020, sheriff Scott Jones "concur[red]" with the proposed discipline.

(h)     On August 25, 2019, deputy Andrew Seidel and fellow deputies applied to a WRAP restraint device to a mentally-ill inmate at the Sacramento County Main Jail. After the subject was taken to the ground in a prone position, deputy Seidel used his knee to strike the inmate in the head, without justification. Deputy Seidel prepared a false report which omitted the excessive force used against the subject. An investigation "sustained" the excessive force allegation. Sacramento County Sheriff's Department, Professional Standards Division No. 2019PSD-0543. On April 7, 2020, chief deputy Santos Ramos recommended issuance of a "letter of reprimand." On April 20, 2020, captain Charles Meeks issued a "letter of reprimand." On April 22, 2020, sheriff Scott Jones "affirmed" the proposed discipline.

(i)     Beginning in May 2019, a deputy repeatedly sent threatening and inappropriate emails to Rachael Rendon at her work-related email address, where she was employed as a parole officer by the California Department of Corrections and Rehabilitation ("CDCR"). The subject was the girlfriend of the deputy's ex-boyfriend, Chris. For example, the deputy threatened the subject that she would "contact your appropriate chain of command" (the deputy previously worked for the CDCR) and that she had an ongoing relationship with Chris. The deputy's harassing emails caused the subject to fear for her safety and the safety of her children and family. The subject made repeated and unsuccessful requests for the deputy to cease her contacts. The deputy also abused her access to the Sacramento County Sheriff's Department's Known Persons File ("KPF") information database to view confidential information about the subject and her family members, for personal and non-legitimate reasons. The subject obtained a civil restraining order against the deputy which prohibited her ability to possess personal and department-issued firearms for one month. The subject's petition for restraining order identified the deputy's previous history of physical assault and stalking. Superior Court of California, County of Sacramento, Case No. 34-2019-7006482. The subject also filed a police report with the Folsom Police Department. Folsom Police Department, Report No. 19-093101148. The subject also filed a citizen complaint. Sacramento County Sheriff's Department, Professional Standards Division No.

2019PSD-0520. Captain James Barnes recommended that the deputy "be suspended from [her] position as Deputy Sheriff for a period of forty-eight (48) hours." On February 26, 2020, sheriff Scott Jones "deemed appropriate" the recommended discipline. Subsequently, the deputy was involved in an excessive force incident where she lied about a fellow officer kicking a suspect in the head, *Weigle v. County of Sacramento*, No. 2:22-cv-01000-MCE-JDP (E.D. Cal.), and an officer-involved death incident where she and fellow officers smothered a mentally-ill Black man to death, *Estate of Stingley v. County of Sacramento*, No. 2:23-cv-00255-TLN-AC (E.D. Cal.).

(j)      On May 20, 2018, a deputy stalked and confronted Wendy McElroy in a coffee shop, told her that she was a deputy sheriff, and threatened to assault and kill her. The deputy was engaged in an ongoing affair with the subject's husband at the time of the assault and threats. The subject filed a citizen complaint. Sacramento County Sheriff's Department, Professional Standards Division No. 2018PSD-273. Captain Matt Petersen recommended that the deputy "receive a Documented Counseling to remain in her personnel file for a period of six (6) months." On November 7, 2018, a Documented Counseling was placed in the deputy's file for six months. Subsequently, the deputy was involved in an excessive force incident where she lied about a fellow officer kicking a suspect in the head, *Weigle v. County of Sacramento*, No. 2:22-cv-01000-MCE-JDP (E.D. Cal.), and an officer-involved death incident where she and fellow officers smothered a mentally-ill Black man to death, *Estate of Stingley v. County of Sacramento*, No. 2:23-cv-00255-TLN-AC (E.D. Cal.).

(k)      On April 11, 2018, deputy Daniel Garcia slammed a mentally-ill inmate against the wall causing a cut to the inmate's lip at the Sacramento County Main Jail. Deputy Garcia did not provide medical attention to the inmate for the injury he caused. An investigation "sustained" the excessive force allegation, and found that deputy Garcia lied in his report and during his interview when he falsely stated that the inmate made a furtive or threatening movement necessitating the assault. Sacramento County Sheriff's Department, Professional Standards Division No. 2018PSD-245. On August 30, 2018, captain Eric Buehler recommended deputy Garcia be suspended for 10 hours. On September 14, 2018, chief deputy Jennifer Freeworth recommended deputy Garcia be suspended for 10 hours. On November 15, 2018, sheriff Scott Jones "affirmed" the proposed discipline.

(l)      On January 8, 2017, deputy Daniel Brown was startled by mental health inmate,

1   Cantrarutti, when he punched his cell door in the Sacramento County Main Jail. The subject laughed,

2   when deputy Brown become startled. Deputy Brown was embarrassed and retaliated against the subject,

3   including by removing him from his cell, tackling him to the ground and punching him, along with

4   several other deputies. An investigation "sustained" the excessive force allegation and found that "the use

5   of force should have never occurred in the first place." Sacramento County Sheriff's Department,

6   Professional Standards Division No. 2017PSD-054. On March 30, 2017, captain Eric Buehler

7   recommended Daniel Brown be suspended for 10 hours. On April 7, 2017, chief deputy David Torgerson

8   recommended Daniel Brown be suspended for 10 hours. On July 7, 2017, sheriff Scott Jones "affirmed"

9   the proposed discipline.

10         (m)      On September 27, 2016, a deputy was involved in an excessive force incident

11   which was recorded on video where an inmate, Monful, was tackled to the ground by a deputy at the

12   Sacramento County Main Jail. An investigation "sustained" the excessive force allegation. Sacramento

13   County Sheriff's Department, Professional Standards Division No. 2016PSB-530. The only discipline

14   imposed was issuance of a 48-hour suspension.

15         (n)      On May 18, 2016, three deputies were involved in an excessive force incident

16   which was recorded on video where an inmate, Roshawn Jackson, was slammed to the ground and had

17   his arms twisted by deputies at the Sacramento County Main Jail. An investigation "sustained" the

18   excessive force allegation. Sacramento County Sheriff's Department, Professional Standards Division

19   No. 201PSB-212. The only discipline imposed was issuance of an 80-hour suspension.

20         (o)      On November 21, 2015, a deputy was involved in an excessive force incident

21   which was recorded on video where an inmate, Yasir Mehmood, was punched and kicked by a deputy

22   while he was defenseless and handcuffed at the Sacramento County Main Jail. An investigation

23   "sustained" the excessive force allegation. Sacramento County Sheriff's Department, Professional

24   Standards Division No. 2015IA-034. The only discipline imposed was issuance of a "letter of

25   reprimand."

26         (p)      On July 6, 2015, a deputy was involved in an excessive force incident which was

27   recorded on video where an inmate, Michael McCormick, was grabbed by the neck, choked, and

28   slammed against a wall by a deputy at the Sacramento County Main Jail. An investigation "sustained"

1  the excessive force allegation. Sacramento County Sheriff's Department, Professional Standards Division

2  No. 201PSB-029. The only discipline imposed was issuance of a "letter of reprimand" and loss of

3  "training officer" status.

4          (q)     On June 5, 2015, six deputies were involved in an excessive force incident which

5  was recorded on video where an inmate, Deshaun Williams, was slammed to the ground and had his arms

6  and legs twisted by deputies at the Rio Cosumnes Correctional Center. An investigation "sustained" the

7  excessive force allegation. Sacramento County Sheriff's Department, Professional Standards Division

8  No. 2015IA-025. The only discipline imposed was issuance of a "documented counseling" and "letter of

9  reprimand."

10         (r)     On January 28, 2015, a deputy was involved in an excessive force incident which

11 was recorded on video where an inmate, Kelly Brown, had his head stepped-on by a deputy at the

12 Sacramento County Main Jail. An investigation "sustained" the excessive force allegation. Sacramento

13 County Sheriff's Department, Professional Standards Division No. 2015IA-005. The only discipline

14 imposed was issuance of a "letter of reprimand."

15         (s)     On October 14, 2014, a deputy was involved in an excessive force incident which

16 was recorded on video where an inmate, Andrew Moras, was slammed to the ground by a deputy at the

17 Sacramento County Main Jail. An investigation "sustained" the excessive force allegation. Sacramento

18 County Sheriff's Department, Professional Standards Division No. 2014IA-046. The only discipline

19 imposed was issuance of a 48-hour suspension.

20         (t)     On July 25, 2014, three deputies were involved in an excessive force incident

21 which was recorded on video where an inmate, Jordan Fagan, was slammed to the ground by deputies at

22 the Sacramento County Main Jail. An investigation "sustained" the excessive force allegation.

23 Sacramento County Sheriff's Department, Professional Standards Division No. 2014IA-041. The only

24 discipline imposed was issuance of a "documented counseling."

25         (u)     On May 24, 2014, a deputy was involved in an excessive force incident which was

26 recorded on video where an inmate, Barnard Jones, was pepper-sprayed by a deputy at the Rio Cosumnes

27 Correctional Center. An investigation "sustained" the excessive force allegation. Sacramento County

28 Sheriff's Department, Professional Standards Division No. 2014IA-028. The only discipline imposed

1    was issuance of a one-step reduction in salary for 26 pay periods.

2           (v)    On April 25, 2014, four deputies were involved in an excessive force incident

3    which was recorded on video where an inmate, Edward Deed, was punched and kicked by deputies at the

4    Sacramento County Main Jail. An investigation "sustained" the excessive force allegation. Sacramento

5    County Sheriff's Department, Professional Standards Division No. 2013IA-032. The only discipline

6    imposed was issuance of a "letter of reprimand."

7           (w)    On August 20, 2013, three deputies were involved in an excessive force incident

8    which was recorded on video where an inmate, Melanie Orantes, was punched in the head by a deputy at

9    the Sacramento County Main Jail. An investigation "sustained" the excessive force allegation.

10   Sacramento County Sheriff's Department, Professional Standards Division No. 2013IA-043. The only

11   discipline imposed was issuance of a "letter of reprimand."

12          (x)    In 2013, a deputy was involved in an excessive force incident which was recorded

13   on video where an inmate, Sundy Vongkhamsomphouwas, was kicked by a deputy at the Rio Cosumnes

14   Correctional Center. An investigation "sustained" the excessive force allegation. Sacramento County

15   Sheriff's Department, Professional Standards Division No. 2013IA-039. The only discipline imposed

16   was issuance of a two-day suspension.

17          55.    Discipline Records: Defendants COUNTY OF SACRAMENTO, SACRAMENTO

18   COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER violated Senate Bill 1421, a state law

19   requiring disclosure of documents about misconduct or significant force by personnel. *See* Cal. Pen.

20   Code § 832.7. Media organizations were forced to sue Defendants COUNTY OF SACRAMENTO and

21   SACRAMENTO COUNTY SHERIFF'S DEPARTMENT and sheriff Scott Jones, in order to compel

22   compliance with state law. <https://ktla.com/news/local-news/sacramento-l-a-times-sue-sacramento-

23   county-sheriffs-department-over-release-of-deputy-misconduct-records/>. As a result, Defendant

24   SACRAMENTO COUNTY SHERIFF'S DEPARTMENT was ordered to "pay more than $100,000 in

25   legal fees to The Sacramento Bee and the Los Angeles Times in its court fight to hold onto deputies'

26   discipline records…" <https://amp.sacbee.com/article235968547.html>.

27          56.    Investigation Delays: Defendants COUNTY OF SACRAMENTO, SACRAMENTO

28   COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER unreasonably delay investigation and

administrative findings in officer-involved incidents of personnel, including in some cases for several years. For example, Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's backlog of investigations is greater than one and one-half years. An incident of alleged misconduct occurring on October 18, 2022, remains pending and "In Progress."

<https://www.sacsheriff.com/pages/released_cases.php>. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's failure timely to investigate and render findings in officer-involved incidents constitutes a violation of Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's own policies and procedures, renders any determination of officer culpability ineffective due to the period of time between when the incident occurred and when discipline or corrective action can be taken, and perpetuates a culture of impunity and unaccountability.

57.     Obviousness: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER were or should have been on notice regarding the need to discontinue, modify, or implement new and different versions of the deficient policies or customs because the inadequacies were so obvious and likely to result in violations of rights of persons coming into contact with their subordinates, including Defendants NATHANIEL DAVIS.

58.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER were aware of numerous incidents of their personnel's excessive and unreasonable uses-of-force, including those incidents described above, but repeatedly refused or failed to take appropriate corrective action, including discipline, re-training, and/or implementation of changes to policies or procedures.

59.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's inadequate policies, procedures, and training did proximately cause violation of rights of persons coming into contact with officials, including the officer-involved shooting of MARQUISE CHAPPLE.

\ \ \

\ \ \

\ \ \

**FIRST CLAIM**

**Excessive Force**

**(U.S. Const. Amend. IV; 42 U.S.C. § 1983)**

60.     Plaintiff MARQUISE CHAPPLE asserts this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and NATHANIEL DAVIS.

61.     The allegations of the preceding paragraphs 1 to 59 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

62.     *Individual Liability*: Defendant NATHANIEL DAVIS used unreasonable and excessive force against Plaintiff MARQUISE CHAPPLE, including by shooting Plaintiff MARQUISE CHAPPLE in the back, in violation of the Fourth Amendment to the United States Constitution.

63.     *Municipal / Supervisory Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to Plaintiff MARQUISE CHAPPLE, in violation of the Fourth Amendment to the United States Constitution.

64.     Defendants JIM COOPER and NATHANIEL DAVIS's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to rights, or were wantonly or oppressively done.

65.     Plaintiff MARQUISE CHAPPLE was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and NATHANIEL DAVIS's actions and inactions, entitling him to receive compensatory and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and NATHANIEL DAVIS; and punitive damages against Defendants JIM COOPER and NATHANIEL DAVIS.

WHEREFORE, Plaintiff MARQUISE CHAPPLE prays for relief as hereunder appears.

\ \ \

\ \ \

\ \ \

**SECOND CLAIM**

**Excessive Force**

**(Cal. Const. Art. I § 13)**

66.     Plaintiff MARQUISE CHAPPLE asserts this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and NATHANIEL DAVIS.

67.     The allegations of the preceding paragraphs 1 to 59 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

68.     *Individual Liability*: Defendant NATHANIEL DAVIS used unreasonable and excessive force against Plaintiff MARQUISE CHAPPLE, including by shooting Plaintiff MARQUISE CHAPPLE in the back, in violation of Article I, Section 13 of the California Constitution.

69.     *Municipal / Supervisory Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to Plaintiff MARQUISE CHAPPLE, in violation of Article I, Section 13 of the California Constitution.

70.     *Vicarious Liability*: Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and pursuant to California Government Code § 815.2(a), for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants JIM COOPER, and NATHANIEL DAVIS.

71.     Defendants JIM COOPER, and NATHANIEL DAVIS's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

72.     Plaintiff MARQUISE CHAPPLE was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and NATHANIEL DAVIS's actions and inactions, entitling him to receive compensatory and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and NATHANIEL DAVIS; and punitive damages against Defendants JIM COOPER and NATHANIEL DAVIS.

27

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Chapple v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

WHEREFORE, Plaintiff MARQUISE CHAPPLE prays for relief as hereunder appears.

### THIRD CLAIM

**Tom Bane Civil Rights Act**

**(Cal. Civ. Code § 52.1)**

73.     Plaintiff MARQUISE CHAPPLE asserts this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and NATHANIEL DAVIS.

74.     The allegations of the preceding paragraphs 1 to 59 are realleged and incorporated, to the extent relevant, as if fully set forth in this Claim.

75.     *Individual Liability*: Defendant NATHANIEL DAVIS used unreasonable and excessive force against Plaintiff MARQUISE CHAPPLE, including by shooting Plaintiff MARQUISE CHAPPLE in the back, with deliberate indifference or reckless disregard, in violation of the Fourth Amendment to the United States Constitution; and Article I, Section 13 of the California Constitution.

76.     *Municipal / Supervisory Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to Plaintiff MARQUISE CHAPPLE, with deliberate indifference or reckless disregard, in violation of the Fourth Amendment to the United States Constitution; and Article I, Section 13 of the California Constitution.

77.     *Vicarious Liability*: Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and pursuant to California Government Code § 815.2(a), for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants JIM COOPER and NATHANIEL DAVIS.

78.     Defendants JIM COOPER and NATHANIEL DAVIS's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

79.     Plaintiff MARQUISE CHAPPLE was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and NATHANIEL DAVIS's actions and inactions, entitling him to receive compensatory

28

and treble damages and civil penalties against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and NATHANIEL DAVIS; and punitive damages against Defendants JIM COOPER and NATHANIEL DAVIS.

WHEREFORE, Plaintiff MARQUISE CHAPPLE prays for relief as hereunder appears.

## FOURTH CLAIM

### Assault / Battery

80.     Plaintiff MARQUISE CHAPPLE asserts this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and NATHANIEL DAVIS.

81.     The allegations of the preceding paragraphs 1 to 49 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

82.     *Individual Liability*: Defendant NATHANIEL DAVIS used unreasonable and excessive force against Plaintiff MARQUISE CHAPPLE, including by shooting Plaintiff MARQUISE CHAPPLE in the back.

83.     *Vicarious Liability*: Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and pursuant to California Government Code § 815.2(a), for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendant NATHANIEL DAVIS.

84.     Defendant NATHANIEL DAVIS's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

85.     Plaintiff MARQUISE CHAPPLE was injured as a direct and proximate result of Defendant NATHANIEL DAVIS's actions and inactions, entitling him to receive compensatory and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and NATHANIEL DAVIS; and punitive damages against Defendant NATHANIEL DAVIS.

WHEREFORE, Plaintiff MARQUISE CHAPPLE prays for relief as hereunder appears.

\ \ \

## FIFTH CLAIM

### Intentional Infliction of Emotional Distress

86.     Plaintiff MARQUISE CHAPPLE asserts this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and NATHANIEL DAVIS.

87.     The allegations of the preceding paragraphs 1 to 49 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

88.     *Individual Liability*: Defendant NATHANIEL DAVIS engaged in outrageous conduct—including, among other actions, excessive force—with intent or reckless disregard of the probability that Plaintiff MARQUISE CHAPPLE would suffer emotional distress and he did suffer severe emotional distress.

89.     *Vicarious Liability*: Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and pursuant to California Government Code § 815.2(a), for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendant NATHANIEL DAVIS.

90.     Defendant NATHANIEL DAVIS's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

91.     Plaintiff MARQUISE CHAPPLE was injured as a direct and proximate result of Defendant NATHANIEL DAVIS's actions and inactions, entitling him to receive compensatory and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and NATHANIEL DAVIS; and punitive damages against Defendant NATHANIEL DAVIS.

WHEREFORE, Plaintiff MARQUISE CHAPPLE prays for relief as hereunder appears.

## SIXTH CLAIM

### Negligence

92.     Plaintiff MARQUISE CHAPPLE asserts this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and

30

NATHANIEL DAVIS.

93.    The allegations of the preceding paragraphs 1 to 59 are realleged and incorporated, to the extent relevant, as if fully set forth in this Claim.

94.    *Individual Liability*: Defendant NATHANIEL DAVIS owed Plaintiff MARQUISE CHAPPLE a duty of care and breached a duty, including, among other actions, by utilizing excessive force and violating the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, and/or California Civil Code § 1714(a).

95.    *Supervisory Liability*: Defendant JIM COOPER owed Plaintiff MARQUISE CHAPPLE a duty of care and maintained a special relationship based on his employer-employee relationship and ability to control the conduct of Defendant NATHANIEL DAVIS, and breached a duty, including, among other actions, by maintaining policies or customs of action and inaction which resulted in harm to Plaintiff MARQUISE CHAPPLE and violating the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, and/or California Civil Code § 1714(a).

96.    *Vicarious Liability*: Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and pursuant to California Government Code § 815.2(a), for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants JIM COOPER and NATHANIEL DAVIS.

97.    Defendants JIM COOPER and NATHANIEL DAVIS's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

98.    Plaintiff MARQUISE CHAPPLE was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and NATHANIEL DAVIS's actions and inactions, entitling him to receive compensatory damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and NATHANIEL DAVIS; and punitive damages against Defendants JIM COOPER and NATHANIEL DAVIS.

WHEREFORE, Plaintiff MARQUISE CHAPPLE prays for relief as hereunder appears.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MARQUISE CHAPPLE seeks Judgment as follows:

1.      For an award of compensatory, general, special, and nominal damages (including under federal and state law) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and NATHANIEL DAVIS, in excess of $3,000,000, according to proof at trial;

2.      For an award of exemplary/punitive damages against Defendants JIM COOPER and NATHANIEL DAVIS, in an amount sufficient to deter and to make an example of them, because their actions and/or inactions, as alleged, were motivated by evil motive or intent, involved reckless or callous indifference to constitutionally and statutorily protected rights, or were wantonly or oppressively done, and/or constituted oppression and/or malice resulting in great harm;

3.      For an award of actual damages, treble damages, punitive damages, civil penalties, and any other available relief against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and NATHANIEL DAVIS, pursuant to California Civil Code §§ 52, 52.1, and any other statute as may be applicable (except that no punitive damages are sought against Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, pursuant to California Civil Code § 818);

4.      For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, California Civil Code § 52.1, California Code of Civil Procedure § 1021.5, and any other statute as may be applicable;

5.      For interest; and

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

6.      For an award of any other further relief, as the Court deems fair, just, and equitable.

Dated: July 16, 2024                          Respectfully Submitted,

By: _____
        Mark E. Merin
        Paul H. Masuhara
        LAW OFFICE OF MARK E. MERIN
        1010 F Street, Suite 300
        Sacramento, California 95814
        Telephone: (916) 443-6911
        Facsimile: (916) 447-8336

        Attorneys for Plaintiff
        MARQUISE CHAPPLE

33

## JURY TRIAL DEMAND

A JURY TRIAL IS DEMANDED on behalf of Plaintiff MARQUISE CHAPPLE.

Dated: July 16, 2024

Respectfully Submitted,

By: _____
    Mark E. Merin
    Paul H. Masuhara
    LAW OFFICE OF MARK E. MERIN
    1010 F Street, Suite 300
    Sacramento, California 95814
    Telephone: (916) 443-6911
    Facsimile: (916) 447-8336

    Attorneys for Plaintiff
    MARQUISE CHAPPLE

COMPLAINT; DEMAND FOR JURY TRIAL
*Chapple v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____