UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARQUISE CHAPPLE,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SACRAMENTO et al.,<br><br>Defendants. | No. 2:24-cv-01939-TLN-CSK<br><br>**ORDER** |

This matter is before the Court on Defendants County of Sacramento ("County"), Sacramento County Sheriff's Department ("Department"), Sheriff Jim Cooper ("Sheriff Cooper"), and Nathaniel Davis's ("Davis") (collectively, "Defendants") Motion to Strike. (ECF No. 7.)  Also before the Court is Sheriff Cooper's Motion to Dismiss (ECF No. 8) and the County and Department's Motion to Dismiss (ECF No. 9).  The motions are fully briefed.[1] (ECF Nos.

---

[1]   Defendants submitted replies in support of both motions that exceeded ten pages in violation of this Court's Civil Standing Order. (*See* ECF Nos. 16, 17; *see also* ECF No. 11 at 5 (The Court limits replies to ten (10) pages).)  The Court in its discretion has considered these additional pages but cautions Defendants that future violations may result in sanctions. *See, e.g.*, *LaComba v. Eagle Home Loans & Inv., LLC*, No. 2:23-CV-00370-KJM-DB, 2023 WL 6201597, at *2 (E.D. Cal. Sept. 22, 2023) (striking filings that did not comply with page limit requirements).

13–18.) As set forth below, Defendants' Motion to Strike is DENIED, and Sheriff Cooper's Motion to Dismiss and the County and the Department's Motion to Dismiss are GRANTED in part and DENIED in part.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

The instant action arises out of an incident where Plaintiff was allegedly shot in the back by Davis, a law enforcement officer, while he was fleeing deputies. (ECF No. 1.) On March 5, 2024, Plaintiff was a front seat passenger in a vehicle parked at The Mart, located at 4220 Fruitridge Road, Sacramento, CA 95820. (*Id*. ¶¶ 12–13.) Alejandro Cervantes-Ramiro ("Ramiro") was in the driver's seat. (*Id*. ¶ 13.) A Sacramento County Sheriff's Department patrol vehicle, carrying three officers including Davis, pulled up behind the vehicle that Ramiro and Plaintiff were occupying. (*Id*. ¶ 14.) The patrol vehicle activated its lights. (*Id*. ¶ 15.) In response, Ramiro allegedly threw a handgun to Plaintiff and instructed him to "[r]un!" (*Id*. ¶ 16.) Davis then exited the patrol vehicle and approached Ramiro and Plaintiff's vehicle holding a flashlight. (*Id*. ¶ 17.) When Davis was fifteen feet away, Plaintiff got out of the vehicle holding a cellphone in his right hand and the handgun in his left. (*Id*. ¶¶ 17–21, 24–25.) Plaintiff pivoted to the right and ran around the back of the vehicle passing in front of Davis and then turning his back to Davis as he tried to flee the scene. (*Id.* ¶¶ 21–22, 24.) Plaintiff alleges he never pointed the handgun at Davis. (*Id.* ¶ 22.) Davis drew his firearm with his right hand and aimed it at Plaintiff while he chased him through the parking lot. (*Id*. ¶¶ 23–27.)

Plaintiff had run approximately seven steps when Davis allegedly shot three bullets at him, two of which struck Plaintiff, causing him to fall to the ground and strike his head on a raised planter in the parking lot. (*Id*. ¶¶ 28–29.) Davis approached Plaintiff, who was lying face-first on the ground. (*Id.* ¶ 38.) Blood was on Plaintiff's leg and leaking out from under his body. (*Id.* ¶ 39.) Davis then twisted Plaintiff's arm behind his back while also applying his knee and body weight to Plaintiff's back. (*Id*. ¶¶ 38, 40.) Davis handcuffed Plaintiff who was then transported to U.C. Davis Medical Center, where he received treatment for his injuries. (*Id*. ¶¶ 45–46.) Plaintiff alleges neither the County, the Department, nor Sheriff Cooper have taken any disciplinary action against Davis in connection with the shooting. (*Id*. ¶ 49.)

On July 16, 2024, Plaintiff filed the instant action against Defendants. (*Id*. at 1.) The Complaint alleges the following claims: (1) excessive force in violation of 42 U.S.C. § 1983 ("§ 1983") against all Defendants; (2) excessive force in violation of California Constitution Article I, § 13 against all Defendants; (3) violation of California Civil Code § 52.1, the Tom Bane Civil Rights Act ("Bane Act") against all Defendants; (4) assault/battery against the County, Department, and Davis; (5) intentional infliction of emotional distress against the County, Department, and Davis; and (6) negligence against all Defendants. (*Id*. at 26–29.) On September 16, 2024, Defendants filed a motion to strike. (ECF No. 7.) On the same date, Sheriff Cooper and the County and Department also filed motions to dismiss.[2] (ECF Nos. 8, 9.)

## II. MOTION TO STRIKE

### A. Standard of Law

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court will only consider striking a defense or allegation if it fits within one of these five categories. *Yursik v. Inland Crop Dusters Inc*., No. 11-cv-01602-LJO-JLT, 2011 WL 5592888, at *3 (E.D. Cal. Nov. 16, 2011) (citing *Whittlestone, Inc. v. Handi–Craft Co*., 618 F.3d 970, 973–74 (9th Cir. 2010)). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney–Vinstein v. A.H. Robins Co*., 697 F.2d 880, 885 (9th Cir. 1983). However, Rule 12(f) motions are "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A*., 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Id*.

### B. Analysis

Defendants argue the Court should strike paragraphs 53 through 56 because: (1) they do not establish Sheriff Cooper's individual liability; and (2) they do not establish the County and

---

[2] Davis did not join either motion to dismiss nor did he file his own separate motion. (*Id*.)

3

Department's municipal liability. (ECF No. 7-1 at 8–11.) Moreover, Defendants argue the paragraphs are prejudicial to Defendants and should be struck. (*Id.* at 11, 14.) The Court addresses each argument in turn.

First, Defendants argue paragraphs 53 through 56 should be struck because they "have no bearing on any claim that is attempted to be made against [Sheriff] Cooper" and the paragraphs contain factually distinct circumstances and isolated incidents. (ECF No. 7-1 at 8, 11.) Second, Defendants argue the allegations these paragraphs should be struck because they fail to establish municipal liability against the County and the Department and are "completely conclusory[.]" (ECF No. 7-1 at 13.) According to Defendants, Plaintiff attempts to "compensate" for these conclusory allegations by including a "laundry list" of incidents that do not identify the specific municipal policy at issue, any omission in a training program, a pattern of similar constitutional violations, or notice by the County/Department that its training or policies were insufficient. (*Id.* at 14.) Given this, Defendants argue the paragraphs contain "immaterial, impertinent, and scandalous information" because the information contained within them serves "no other purpose than to impermissibly expand the scope of the case and discovery[.]" (*Id.*) In opposition, Plaintiff argues Defendants' motion should be denied because paragraphs 53 through 56 are essential to support *Monell* liability by demonstrating a longstanding custom or policy of excessive force. (ECF No. 15 at 2.)

The Court finds Defendants' arguments unpersuasive. First, most of the cited allegations involve officer use of excessive force — the same constitutional violation Plaintiff alleges. (ECF No. 1 ¶ 53 (a)–(i).) Second, none of the allegations involve force exceeding that used in the instant case. *See Thurston v. City of Vallejo*, No. 2:19-CV-1902-KJM-CKD, 2021 WL 1839717, at *5 (E.D. Cal. May 7, 2021) (striking allegations of instances where force exceeded that suffered by the plaintiff). Third, while some of the allegations may differ factually, as described further below, the Court does not find these differences significant enough to make them irrelevant, because they either involve an officer using force against an individual or go towards establishing that personnel have allegedly been allowed to use excessive force with impunity. *See Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 803 (9th Cir. 2018) ("It is sufficient to prove a

'custom' of encouraging excessive force by showing that personnel have been allowed to use force with impunity."). Finally, while the Court agrees some of the information contained within these paragraphs is conclusory, this is not enough to strike the allegations given most of the information is material to Plaintiff's *Monell* claim. *See Burgess v. Cnty. of San Diego*, No. 21-CV-616-MMA (MSB), 2021 WL 5810662, at *2 (S.D. Cal. Dec. 7, 2021) ("The Court agrees that Allegations 1 and 4 are arguably conclusory; however, this is outweighed by the materiality of the allegations to Plaintiff's *Monell* claim."). Without more, Defendants have failed to prove these allegations have no bearing on Plaintiff's claim.

As to Defendants' argument regarding prejudice, the Court is not persuaded. Defendants contend the information in paragraphs 53 through 56 cast them in a "derogatory light." (ECF No. 7 at 11.) In opposition, Plaintiff argues Defendants fail to show any prejudice resulting from these allegations because Defendants can move to exclude evidence at the summary judgment stage or before trial. (ECF No. 15 at 8.) In response, Defendants argue these paragraphs will lead to unnecessary discovery and motion practice. (ECF No. 18 at 9.) The Court finds this unsupported argument unavailing. *See, e.g., Figueroa*, 506 F. Supp. 3d at 1061 (similarly finding no prejudice); *Est. of Stingley v. Cnty. of Sacramento*, No. 2:23-CV-00255-TLN-AC, 2025 WL 842770, at *8 (E.D. Cal. Mar. 18, 2025) (same).

In sum, Defendants have not shown paragraphs 53 through 56 have no possible bearing on Plaintiff's claims nor provide any sufficient explanation as to how the information within these paragraphs is prejudicial. Therefore, the Court DENIES Defendants' motion to strike. *See V.R. v. Cnty. of San Bernardino*, No. EDCV191023JGBSPX, 2019 WL 8221081, at *4 (C.D. Cal. Dec. 6, 2019) ("A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action." (internal citation omitted)).

### III.  MOTIONS TO DISMISS

#### A.  Standard of Law

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain

"a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss" for failure to state a claim. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680 (internal quotations omitted).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

B. Analysis

Sheriff Cooper and the County and the Department make several overlapping arguments in their respective motions to dismiss. (ECF Nos. 8, 9.) As such, the Court addresses the arguments presented in the two motions together. The issues can be distilled as follows: (1) whether Plaintiff plausibly alleges an excessive force claim against Sheriff Cooper, the County and the Department; (2) whether Article I, § 13 of the California Constitution confers a private right of action; (3) whether Plaintiff plausibly alleges specific intent as required for a Bane Act claim; (4) whether California law creates a duty of care to support Plaintiff's claim for negligence; and (5) whether the Department is a distinct legal entity from the County such that Plaintiff's state law claims against the Department can stand. (ECF No. 8-1 at 8–15; ECF No. 9-1

7

at 11–21.) The Court examines each issue in turn.

### i. Excessive Force Claim (Claim One)

Both Sheriff Cooper and the Department and County argue the § 1983 excessive force claim should be dismissed against them. (ECF No. 8-1 at 8–11; ECF No. 9-1 at 11–19.) The Court examines each of their arguments in turn.

#### a) Sheriff Cooper

Sheriff Cooper argues Plaintiff's allegations are purely conclusory and do not sufficiently establish a supervisory liability claim against Sheriff Cooper in his individual capacity. (ECF No. 8-1 at 8–11.) Specifically, Sheriff Cooper asserts Plaintiff fails to meet his burden "to identify a specific policy implemented by Cooper or a specific event or events instigated by Cooper which caused Plaintiff's alleged harm." (*Id.* at 11.) In opposition, Plaintiff contends Sheriff Cooper confuses the distinction between "official" and "individual" capacity and further argues he pleads sufficient allegations to state a supervisory liability claim. (ECF No. 14 at 7–14.) In reply, Sheriff Cooper clarifies he does not dispute there may be individual liability for a § 1983 claim if he "acquiesced to a deficient policy that caused the constitutional violation." (ECF No. 17 at 4.) Instead, Sheriff Cooper explains his argument rests on Plaintiff failing to identify a policy or set of facts in the Complaint that plausibly shows he "created a policy pertaining to lethal force against armed suspects which caused a constitutional deprivation." (*Id.* at 5.)

In § 1983 claims against supervisors in their individual capacity, "[a] supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). The supervisor's participation could include his "own culpable action or inaction in the training, supervision, or control of his subordinates . . . his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal alterations omitted). "The causal connection is established 'by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or

reasonably should have known would cause others to inflict a constitutional injury.'" *Tennyson v. Cnty. of Sacramento*, No. 2:19-CV-00429-KJM-EFB, 2020 WL 4059568, at *3 (E.D. Cal. Jul. 20, 2020) (quoting *Rodriguez*, 891 F.3d at 798).

Here, Plaintiff cites numerous incidents were deputies previously used excessive force, including eight officer-involved shootings. (ECF No. 14 (citing ECF No. 1 ¶¶ 53(a)–(i), 54(a)–(x)).) Plaintiff contends Sheriff Cooper was aware of "numerous incidents of [his] personnel's excessive and unreasonable uses of force," but repeatedly refused or failed to take appropriate corrective action. (*Id.* at 11 (citing ECF No. 1 ¶ 58).) Further, Plaintiff argues Sheriff Cooper failed to take any adverse action against Davis after he shot Plaintiff. (*Id.* at 14 (citing ECF No. 1 ¶ 49).) Plaintiff argues these allegations are sufficient to establish Sheriff Cooper is liable as a supervisor. (*Id.* at 11 (citing ECF No. 1 ¶ 58).)

The Court agrees the allegations are sufficient to survive the motion to dismiss stage. *See, e.g.*, *Est. of Stingley*, 2025 WL 842770, at *3 (similarly finding allegations sufficient to establish a § 1983 excessive force claim against a sheriff). Taking all reasonable inferences in Plaintiff's favor, Sheriff Cooper's alleged knowledge about different incidents of excessive force, his failure to implement corrective actions, including his failure to take any adverse action against Davis could be construed as a custom or practice of allowing deputies to use excessive force with impunity.[3] *See id.* (citing *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).

Accordingly, the Court DENIES Sheriff Cooper's motion to dismiss the § 1983 excessive force claim against him.

///

---

[3] Given the Court finds these allegations are sufficient to support a § 1983 excessive force claim against Sheriff Cooper based on custom or practice, the Court does not address the arguments regarding Plaintiff's other theories. *See, e.g.*, *Est. of Temple v. Placer Cnty. Sheriff's Off.*, No. 2:23-CV-01713-DAD-CKD, 2025 WL 950523, at *7 (E.D. Cal. Mar. 28, 2025) ("[B]ecause plaintiffs have stated a claim through their practice or custom theory, it is not necessary to evaluate their failure to train and ratification theories at this stage of the litigation."); *Est. of Verdugo v. City of El Centro*, No. 20-CV-2458 W (KSC), 2022 WL 16577870, at *5 (S.D. Cal. Nov. 1, 2022) ("Since the Court finds that Plaintiffs' factual allegations as to the City's failure to train sufficiently state a claim for a violation of § 1983, the Court does not reach Defendant's arguments as to Plaintiffs' other theories.").

          *b)*  *The Department and the County*

It is well-established that municipalities cannot be held liable under § 1983 for unconstitutional torts of their employees based solely on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 693–94 (1978). Pursuant to *Monell*, a municipality is only liable under § 1983 when its own illegal acts are a moving force in the constitutional violation. *Id.* A plaintiff may assert *Monell* liability based on: (1) an official policy; (2) a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity"; (3) the act of an "official whose acts fairly represent official policy such that the challenged action constituted official policy"; or (4) where "an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.'" *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (citations omitted).

The Department and County also move to dismiss the § 1983 excessive force claim against them, arguing Plaintiff's allegations are entirely conclusory and fail to establish liability under any theory — (1) official municipal policy, (2) longstanding practice or custom, (3) tortious conduct by a policy-making official, or (4) delegation or ratification. (ECF No. 9-1 at 11–17.) Moreover, the Department and County contend Plaintiff does not allege deliberate indifference or causation. (*Id.* at 17–19.) In opposition, Plaintiff argues he is not required to "cite any specific 'official municipal policy'" and has sufficiently alleged there is a custom or practice by alleging numerous incidents where deputies previously used excessive force. (ECF No. 13 at 7–10.) Further, Plaintiff clarifies that he has not asserted a theory of ratification and argues he sufficiently alleges the Department and the County proximately caused his harm. (*Id.* at 14.) In reply, the Department and the County maintain that Plaintiff fails to establish a claim against them under any theory. (ECF No. 16 at 3–10.)

"Absent a formal governmental policy, [the plaintiff] must show a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity.'" *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citation omitted). "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled [ ] policy.'" *Id.* (citation omitted). "Liability for improper custom may not be predicated on isolated or sporadic

10

1  incidents; it must be founded upon practices of sufficient duration, frequency and consistency that

2  the conduct has become a traditional method of carrying out policy." *Id.* "The line between

3  'isolated or sporadic incidents' and 'persistent widespread conduct' is not clearly delineated,

4  although where more than a few incidents are alleged, the determination appears to require a

5  fully-developed factual record." *Lemus v. Cnty. of Merced*, No. 1:15-CV-00359-MCE-EPG,

6  2016 WL 2930523, at *4 (E.D. Cal. May 19, 2016).

7        The Court agrees with Plaintiff that he sufficiently alleges a *Monell* claim for excessive

8  force against the Department and County based on a custom or practice.[4] Plaintiff alleges several

9  incidents involving deputies exercising excessive or unreasonable force. (ECF No. 1 ¶¶ 53–54.)

10  There was an officer-involved shooting in eight of these incidents. (*Id.*) One such incident

11  involved an individual attempting to flee from deputies when they shot and killed him. (*Id.* ¶

12  53(c).) These prior incidents, while not identical, contain "factually pertinent" components,

13  which the Court finds is enough to survive the Department and County's motion to dismiss. *See*

14  *Est. of Stingley*, 2025 WL 842770, at *5 (citing *McCoy v. City of Vallejo*, No. 2:19-cv-01191-

15  JAM-CKD, 2020 WL 374356, at *4 (E.D. Cal. Jan. 23, 2020)) (finding similarly); *see also Ochoa*

16  *v. City of San Jose*, No. 21-CV-02456-BLF, 2021 WL 7627630, at *6 (N.D. Cal. Nov. 17, 2021)

17  (finding alleged incidents were showed "significant facial similarities" to the allege facts of the

18  case).

19        Moreover, the incidents cited stretch over more than ten years, plausibly demonstrating a

20  persistent and widespread custom that is far from sporadic. *See Trevino*, 99 F.3d at 918; *see also*

21  *Ochoa*, 2021 WL 7627630, at *6 ("[O]lder excessive force incidents support the existence of a

22  longstanding culture, and the fact that complaints were not sustained could support a systematic

23  failure to address the kinds of constitutional violations [p]laintiff is alleging[.]"). Given this and

24  Plaintiff's allegations that the County and Department were aware of the incidents but repeatedly

25  failed to take action, such as "discipline, re-training, and/or implementation of changes to policies

---

[4] Because the Court finds Plaintiff has stated a claim against the Department and the County based on a custom or practice, the Court does not address the arguments regarding Plaintiff's other theories.

11

1   or procedures," the Court finds Plaintiff has sufficiently alleged an excessive force claim against
2   the Department and the County.

3   Accordingly, the Court DENIES the Department and the County's motion to dismiss the §
4   1983 excessive force claim against them.

### ii. Excessive Force – Article I, § 13 (Claim Two)

6   Sheriff Cooper, the Department, and the County all argue Article I, § 13 of the California
7   Constitution does not confer a private right of action for damages. (ECF No. 8-1 at 11–12; ECF
8   No. 9-1 at 19–20.) In opposition, Plaintiff argues the California Supreme Court has not resolved
9   this issue and as such the two-step analysis outlined in *Katzberg v. Regents of Univ. of Cal.*, 29
10  Cal. 4th 200, 217 (2002) must be utilized. (ECF No. 14 at 15; ECF No. 13 at 15.) According to
11  Plaintiff, this two-step analysis leads to the conclusion that a private cause of action for damages
12  exists. (ECF No. 14 at 16; ECF No. 13 at 16.)

13  However, as this Court stated just a few months ago after examining virtually identical
14  arguments from the exact same attorneys, "[t]his Court has consistently held that Article I, § 13
15  does not confer a private right of action for damages." *Est. of Stingley v. Cnty. of Sacramento*,
16  No. 2:23-CV-00255-TLN-AC, 2025 WL 842770, at *6 (E.D. Cal. Mar. 18, 2025) (collecting
17  prior rulings on the same issue). Plaintiff provides no new argument to persuade the Court to
18  change its position. However, the Court reiterates it would welcome guidance from the
19  California Supreme Court, the California appellate courts, or the Ninth Circuit on this issue.

20  In sum, the Court GRANTS Sheriff Cooper's and the Department and County's motions
21  to dismiss the Article I, § 13 excessive force claim without leave to amend. *See Theme*
22  *Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1010 (9th Cir. 2008) ("[L]eave to amend
23  will not be granted where an amendment would be futile.").

### iii. Bane Act (Claim Three)

25  Next, Sheriff Cooper argues Plaintiff's conclusory allegations are insufficient to show the
26  specific intent required to support a Bane Act claim against him. (ECF No. 8-1 at 12–13.)
27  Specifically, Sheriff Cooper argues the Complaint is devoid of any allegations that he took a
28  particular action with "specific intent to deprive Plaintiff of the enjoyment of his constitutional

rights[.]" (*Id.* at 13.) In opposition, Plaintiff argues a Bane Act violation can be based on supervisory conduct and further that Sheriff Cooper maintained policies or customs with deliberate indifference that resulted in harm to Plaintiff. (ECF No. 14 at 17–18.) In reply, Sheriff Cooper maintains Plaintiff's conclusory allegations do not support a Bane Act claim and Plaintiff's citations are unpersuasive. (ECF No. 17 at 13–14.)

The Bane Act provides a private cause of action against anyone who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the Constitution or laws of the United States, or laws and rights secured by the Constitution or laws of California." Cal. Civil Code § 52.1(a). A Bane Act claim requires a showing of specific intent to violate protected rights, which can be satisfied by "[r]eckless disregard of the right at issue." *Cornell v. Cty. & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 800 (2017); *see also Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018); *S.R. Nehad v. Browder*, 929 F.3d 1125, 1142 n.15 (9th Cir. 2019) ("Although Bane Act claims do require the specific intent to deprive a person of constitutional rights, such intent can be proven by evidence of recklessness." (internal citation omitted)). Moreover, a "Bane Act claim can be asserted against a sheriff based on his or her conduct as a supervisor rather than on personal involvement in violence or a threat of violence against a plaintiff." *Black Lives Matter-Stockton Chapter v. San Joaquin Cnty. Sheriff's Off.*, 398 F. Supp. 3d 660, 679 (E.D. Cal. 2019) (internal citation omitted); *see also Greer v. Cnty. of San Diego*, 726 F. Supp. 3d 1058, 1085 (S.D. Cal. 2023) (noting "[t]he California Supreme Court has implicitly held that a Bane Act claim can be brought against a sheriff based on his supervisory conduct" (citing *Venegas v. Cnty. of Los Angeles*, 32 Cal. 4th 820 (2004))).

Here, Plaintiff alleges Sheriff Cooper "maintained policies or customs of action and inaction" which resulted "in harm to Plaintiff [] with deliberate indifference or reckless disregard[.]" (ECF No. 1 ¶ 76.) More specifically, Plaintiff asserts Sheriff Cooper had final policymaking authority, failed to train officers — including Davis — in areas such as unreasonable and excessive force, and was "deliberately indifferent to the creation and maintenance of a culture permitting or encouraging personnel's use of unreasonable and

1  excessive force, including [] Davis." (*Id.* ¶¶ 50, 52–53.) Drawing all reasonable inferences in

2  Plaintiff's favor, the Court finds Plaintiff has sufficiently alleged a Bane Act claim against Sheriff

3  Cooper based on a supervisory liability theory. *See Galley v. Cnty. of Sacramento*, No. 2:23-CV-

4  00325 WBS AC, 2023 WL 4534205, at *5 (E.D. Cal. July 13, 2023) ("Several courts have held a

5  Bane Act claim can be based on supervisory conduct.").

6  Accordingly, the Court DENIES Sheriff Cooper's motion to dismiss the Bane Act claim.

                  *iv.  Negligence (Claim Six)*

8  Sheriff Cooper finally moves to dismiss Plaintiff's negligence claim against him. To state

9  a claim for negligence a plaintiff must show: (1) the existence of a duty of care; (2) a duty; (3)

10  causation; (4) damages. *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001). Plaintiff's

11  negligence claim against the County, the Department, Sheriff Cooper and Davis rests on three

12  separate theories of liability.[5] (ECF No. 1 ¶¶ 94–96.) Relevant to Sheriff Cooper, Plaintiff's

13  negligence claim is based on a supervisory liability theory. (*Id.* ¶ 95.) Plaintiff alleges Sheriff

14  Cooper owed him a duty of care and "maintained a special relationship based on his employer-

15  employee relationship and ability to control the conduct of [] Davis[.]" (*Id.*)

16  In moving to dismiss this negligence claim, Sheriff Cooper argues Plaintiff fails to allege

17  he maintained a special relationship with Plaintiff such that an affirmative duty of care was

18  created. (ECF No. 8-1 at 14–15.) To support this argument, Sheriff Cooper relies on *Estate of*

19  *Osuna v. County of Stanislaus*, which dismissed a negligence claim against a sheriff based on

20  supervisory liability because the complaint had not alleged the sheriff had the requisite "special

21  relationship." (*Id.* (citing 392 F. Supp. 3d 1162, 1183 (E.D. Cal. 2019)).)

22  In opposition, Plaintiff argues Sheriff Cooper's authority is outdated and more recent

23  authority demonstrates Plaintiff's allegations are sufficient to show the requisite relationship

24  exists between Plaintiff and Sheriff Cooper. (ECF No. 14 at 19 (citing *Brown v. USA*

25  *Taekwondo*, 11 Cal. 5th 204, 216 (2021)).) In *Brown*, the California Supreme Court clarified that

26  when determining whether a defendant has a legal duty to protect a plaintiff from injuries caused

---

[5] The County and the Department did not move to dismiss the negligence claim asserted against them. (*See generally* ECF No. 9.)

14

by a third party, courts must undertake a two-step inquiry. 11 Cal. 5th at 216. First, courts "must determine whether there exists a special relationship between the parties or some other set of circumstances giving rise to an affirmative duty to protect." *Id.* at 209. A special relationship between the defendant and the dangerous third party is one that "entails an ability to control [the third party's] conduct." *Id.* at 216. Second, if there is a special relationship, then courts must consider certain factors to determine whether there are relevant policy considerations that counsel limiting this duty. *Id.*

In reply, Sheriff Cooper argues *Brown* is distinguishable and inapplicable to the instant case. (ECF No. 17 at 15–16.) Specifically, Sheriff Cooper contends that while *Brown* holds employer-employee relationship may give rise to an affirmative duty to protect, this does not occur if the defendant "had not increased the risk of harm to the victim, [] had no special relationship with the assailant or the victim, and [] had not invited the plaintiff to depend on their protection." (*Id.* at 15 (citing *Brown*, 11 Cal. 5th at 216).)

Sheriff Cooper pulls this quotation from a string cite in *Brown*, which was discussing how officers did not owe a victim of assault a duty to protect. *See* 11 Cal. 5th at 216. The circumstances in the instant case differ. As to the first step in the *Brown* inquiry, Plaintiff alleges Sheriff Cooper had the ability to control Davis — the officer who allegedly shot Plaintiff — and failed to adequately train, supervise, and discipline officers. (ECF No. 1 ¶¶ 52, 95.) Drawing all reasonable inferences in Plaintiff's favor, the Court finds Plaintiff sufficiently alleges a special relationship exists that put Sheriff Cooper in a unique position to protect Plaintiff from injury thereby creating a duty of care. As to the second step in the *Brown* inquiry, Sheriff Cooper provides no argument regarding any relevant policy considerations which might counsel limiting this duty. *See Brown*, 11 Cal. 5th at 209 (discussing the factors a court must consider to determine whether a duty arising from a special relationship should be limited). The Court declines to delve into this inquiry on its own. Without more, the Court DENIES Sheriff Cooper's motion to dismiss the negligence claim.

                        *v.  The Department versus the County*

Finally, the Department and the County argue Plaintiff's state law claims against the

1 Department fail because the Department is not a distinct legal entity from the County and should
2 therefore be dismissed. (ECF No. 9-1 at 20–21.) Relying on *Pierce v. San Mateo County*
3 *Sheriff's Dept.*, the Department and the County argue under California law the Department "is a
4 department of [the] County" and therefore redundant. (*Id.* at 20 (quoting 232 Cal. App. 4th 995,
5 1000 n.1 (2014).) In opposition, Plaintiff contends this argument goes against Ninth Circuit
6 precedent which has found a sheriff's department is a public entity and "is a separately suable
7 entity." (ECF No. 13 at 17–18 (quoting *Streit v. Cnty. of Los Angeles*, 236 F.3d 552, 557
8 (2001)).) In reply, the Department and the County argue *Streit* did not consider whether a suit
9 against a County and a Department was appropriate under a redundant defendant theory. (ECF
10 No. 16 at 12.) Therefore, the Department and the County contend the "rationale in *Pierce*
11 remains sound." (*Id.* at 12–13.)

12 The Court disagrees. The "rationale" the County and Department rely upon in *Pierce* is a
13 one sentence footnote stating, "[t]he Sheriff's Department is not a separate governmental entity,
14 but a department of San Mateo County (County)." 232 Cal. App. 4th at 1000 n.1. There is no
15 analysis in this footnote to support the redundant defendant theory that the Department and the
16 County propose here. Moreover, it is unclear whether this statement was meant to refer only to
17 the San Mateo County Sheriff's Department or to all sheriff's departments generally. *See Hulet v.*
18 *Cnty. of Tuolumne*, No. 1:23-CV-01217-KES-HBK, 2024 WL 3758360, at *5 (E.D. Cal. Aug. 12,
19 2024) (finding similarly). Finally, this Court, along with other courts in this District, have found
20 § 1983 actions can proceed simultaneously against a County and a Sheriff's Department. *See,*
21 *e.g.*, *Est. of Debbs v. Cnty. of Sacramento*, No. 2:20-CV-01153-TLN-DB, 2023 WL 4108320, at
22 *4 (E.D. Cal. June 21, 2023) (denying motion for summary judgment on the basis that a sheriff's
23 department was redundant to the county); *Harris by & through Lester v. Cnty. of Sacramento*, No.
24 2:17-CV-02346-MCE-AC, 2018 WL 3752176, at *3 (E.D. Cal. Aug. 8, 2018) (finding § 1983
25 actions can proceed against both a county and a sheriff's department). The Department and
26 County's arguments to the contrary are unpersuasive at this stage.

27 Accordingly, the County and Department's motion to dismiss the state law claims against
28 the Department is DENIED.

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motion to Strike (ECF No. 7), and GRANTS in part and DENIES in part Sheriff Cooper's Motion to Dismiss (ECF No. 8) and the Department and the County's Motion to Dismiss (ECF No. 9).  Defendants shall file an answer not later than twenty-one (21) days from the electronic filing date of this Order.

IT IS SO ORDERED.

Date: June 10, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

17